UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

JESUS BARILLA CASTANEDA, CDCR #K-23993,

Plaintiff,

vs.

CDCR, et al.,

Defendants.

Case No.: 3:18-cv-1018-LAB-BGS

**ORDER:**

**1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS AND TO EXCEED PAGE LIMITS [ECF Nos. 2, 3]**

**AND**

**2) DISMISSING CLAIMS AND DEFENDANTS PURSUANT TO 28 U.S.C. § 1915(e)(2) AND § 1915A(b)(1)**

Jesus Barilla Castaneda ("Plaintiff"), incarcerated at Salinas Valley State Prison, ("SVSP") located in Soledad, California, is proceeding pro se in this case with a civil rights Complaint filed pursuant to 22 U.S.C. § 1983 (ECF No. 1).

Plaintiff has not prepaid the $400 civil filing fee required by 28 U.S.C. § 1914(a); instead, he has filed a Motion to Proceed In Forma Pauperis ("IFP") pursuant to 28

U.S.C. § 1915(a) (ECF No. 2). He has also filed a Motion for Leave to File Excess Pages (ECF No. 3).

Plaintiff claims almost 40 individual California Department of Corrections and Rehabilitation ("CDCR") correctional officials employed at the Richard J. Donovan Correctional Facility ("RJD") have violated his constitutional rights when he was housed at RJD in 2016.

## I. Motion to Proceed IFP

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $400.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). However, a prisoner granted leave to proceed IFP remains obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, __ U.S. __, 136 S. Ct. 627, 629 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether his action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1) & (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for ... the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $50. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. June 1, 2016). The additional $50 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those payments to the Court until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 136 S. Ct. at 629.

In support of his request to proceed IFP, Plaintiff has submitted a prison certificate authorized by a SVSP accounting official and a copy of his CDCR Inmate Statement Report. *See* ECF No. 2; 28 U.S.C. § 1915(a)(2); S.D. Cal. CivLR 3.2; *Andrews*, 398 F.3d at 1119. These documents shows that Plaintiff had an available balance of zero at the time of filing. *See* ECF No. 2 at 6-9. Based on this accounting, the Court GRANTS Plaintiff's request to proceed IFP, and will assess no initial partial filing fee pursuant to 28 U.S.C. § 1915(b)(1). See 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Bruce*, 136 S. Ct. at 630; *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay ... due to the lack of funds available to him when payment is ordered."). The Court will further direct the Secretary of the CDCR, or his designee, to instead collect the entire $350 balance of the filing fees required by 28 U.S.C. § 1914 and forward them to the Clerk of the Court pursuant to the installment payment provisions set forth in 28 U.S.C. § 1915(b)(1). *See id.*

**II. Motion for Leave to File Excess Pages**

Civil Local Rule 8.2a provides that complaints filed by prisoners pursuant to 42 U.S.C. § 1983 must be "legibly written or typewritten on forms supplied by the court," and any additional pages not exceed a total of fifteen. *See* S.D. CAL. CIV. L.R. 8.2.a. Plaintiff used the Court's form Complaint, but he interspersed additional pages and attached more—therefore, his pleading comprises a total of 36 pages (ECF No. 1).

A court may sua sponte strike a document filed in violation of the Court's local procedural rules. *See Ready Transp., Inc. v. AAR Mfg., Inc.*, 627 F.3d 402, 404 (9th Cir. 2010) (noting district court's "power to strike items from the docket as a sanction for litigation conduct"); *Smith v. Frank*, 923 F.3d 139, 142 (9th Cir. 1991) ("For violations of the local rules, sanctions may be imposed including, in appropriate cases, striking the offending pleading."). However, "district courts have broad discretion in interpreting and applying their local rules," *Simmons v. Navajo Cty.*, 609 F.3d 1011, 1017 (9th Cir. 2010) (internal quotation and citation omitted), and the Court construes the pleadings of pro se litigants in civil rights cases liberally, affording them the benefit of doubt. *See Karim-Panahi v. L.A. Police Dept.*, 839 F.2d 621, 623 (9th Cir. 1988); *Bretz v. Kelman*, 773 F.2d 1026, 1027, n.1 (9th Cir. 1985) (en banc).

Here, while Plaintiff's Complaint exceeds the page limitations set by Local Rule 8.2.a, and involves alleged acts of wrongdoing committed by more than 3 dozen individual correctional officials, the Court hesitates to conclude Plaintiff's Complaint is so verbose, "replete with redundancy [or] largely irrelevant" that it violates FED. R. CIV. P. 8(a). *See Hearns v. San Bernardino Police Dept.*, 530 F.3d 1124, 1132 (9th Cir. 2008) (citation omitted); *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1059 (9th Cir. 2011) (noting that while "the proper length and level of clarity for a pleading cannot be defined with any great precision," Rule 8(a) has "been held to be violated by a pleading that was needlessly long, or a complaint that was highly repetitious, or confused, or consisted of incomprehensible rambling." (quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1217 (3d ed. 2010))).

Here, the Court finds that it can, at least for purposes of conducting its mandatory sua sponte screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A, manage to discern which factual claims in Plaintiff's Complaint are brought against which Defendants and when and where they are alleged to have occurred. Accordingly, the Court GRANTS Plaintiff's Motion for Leave to File Excess Pages (ECF No. 3).

///

## IV. Sua Sponte Screening per 28 U.S.C. § 1915(e)(2) and § 1915A

### A. Standard of Review

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (citations omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009).

B. Plaintiff's factual allegations

On April 23, 2016, Plaintiff was transferred to RJD. *See* Compl. at 4. Plaintiff is a paraplegic and is "wheelchair bound." *Id.* Because of Plaintiff's disability, he requires the "use of catheters" and has "incontinence accidents" which he claims is a "source of tension" with other cellmates. *Id.* Plaintiff alleges that he has been incarcerated for more than twenty (20) years and has "subjected cell partners to the constant sights and smells reserved for nurses and doctors." *Id.* at 5.

Plaintiff was formerly classified as a "Southern Hispanic" gang member which served to "protect" him because one of the "primary rules" of the gang was "cellmates could not fight." *Id.* If Plaintiff were to engage in a fight with a cellmate, it would result in "punishment" by other gang members which was "more severe" than what prison officials would do in response to a fight. *Id.*

Prior to transferring to RJD, Plaintiff "renounced" his membership in the prison gang. *Id.* As a result, Plaintiff could no longer be housed in "General Population" and instead had to be housed in the "Sensitive Needs Yard ("SNY")." *Id.* This change in status also meant that Plaintiff was "no longer protected by any rule." *Id.*

At some point after his transfer to RJD, Plaintiff requested "single cell status ("SCS")." *Id.* at 6. Plaintiff further claims Correctional Counselor Vogel had knowledge of Plaintiff's request and that Plaintiff "could not engage in [his] daily activities without it upsetting another person in the cell." *Id.* Plaintiff alleges that Vogel knew that if Plaintiff had a cellmate Plaintiff would "certainly be assaulted or even killed." *Id.* Plaintiff claims that Vogel was also aware that Plaintiff had lawsuits pending against correctional officials at the prison where he was previously housed. *See id.*

Plaintiff claims that on May 1, 2016, Vogel "explained [his] circumstances" to Plaintiff's clinician, Dr. Lewis. *Id.* Plaintiff argues that Lewis "knew he was required" to recommend Plaintiff receive SCS. *Id.* Lewis denied Plaintiff's request for a recommendation for SCS and purportedly told Plaintiff that he "should have thought about that before [Plaintiff] filed a lawsuit against corrections officers." *Id.*

Plaintiff submitted an "ADA (Americans with Disabilities Act) appeal to force staff" to place Plaintiff in SCS. *Id*. Captain S. Anderson, Sergeant McGee, Sergeant Caniman, and Correctional Counselor Self placed Plaintiff in "Administrative Segregation ("Ad-Seg") and issued Plaintiff a "Rules Violation Report ("RVR")" for refusing to accept a cellmate *Id.* at 6-7. Plaintiff claims these correctional officers knew he "would be hurt or killed" or that in "anticipation to being hurt or killed" it would "likely cause [Plaintiff] to attempt suicide." *Id.* at 7.

In July of 2016, Plaintiff "informed W. Tucker" that he required the return of his wheelchair" and would file a lawsuit if it was not returned. *Id.* On July 15, 2016, Tucker "faxed a copy of [his] correspondence to Sgt. Caniman and McGee and asked them to place [him] in Ad-Seg for threatening to file suit against her." *Id.* Caniman and McGee told Plaintiff they would not place him in "Ad-Seg" but to expect that Tucker would continue to retaliate against Plaintiff. *Id.* at 7-8.

On July 16, 2016, Plaintiff claims he was retaliated against when Tucker, Anderson, McGee, Caniman, Givens, and "Tower Officer John Doe #1" placed "another inmate into [his] cell at 12 a.m." while Plaintiff was sleeping. *Id.* at 8.

On July 20, 2016, Plaintiff claims "C.O. Romero and Valdovinos retaliated against [him] for having filed a complaint against Valdovinos." *Id.* Romero "grabbed the back of [Plaintiff's] wheelchair" and "rammed [him] into the wall." *Id.* As Plaintiff was being pushed in his wheelchair by Romero, he claims Romero "crashed [him] into the right wall, then crashed [him] into the left wall and then again against the right wall." *Id.* Plaintiff also claims Romero "grabbed [his] arm and attempted to twist [his] arm in order to hyperextend the shoulder and elbow." *Id.* Romero and Valdovinos "took turns trashing" Plaintiff's cell. *Id.* at 8-9. Plaintiff claims Romero "warned [him] not to file any complaint against him." *Id.* at 9.

On July 22, 2016, Plaintiff was "struck in the back by a large rock" and claims that Renteria admitted to throwing the rock. *Id.* Plaintiff alleges Renteria asked him if he "wanted [Renteria] to go trash [Plaintiff's] cell again for having filed a complaint"

against a correctional officer. *Id.* Plaintiff claims Sergeant Kang and Sergeant Duncan "were aware that C.O.'s Romero, Renteria, and Valdovinos attacked and hurt inmates for any reason or no reason." *Id.*

On October 20, 2016, Anderson, McGee, Caniman, Espinoza, and Archuletta "conspired" to have another inmate assault Plaintiff if Plaintiff "refused to allow" this inmate to enter Plaintiff's cell. *Id.* at 10. Plaintiff claims this inmate "stood beside Espinoza" and asked Espinoza "if he wanted him to begin assaulting" Plaintiff. *Id.* Archuletta "grabbed" Plaintiff's wheelchair and pulled him into the doorway of his cell. *Id.* Archuletta let the other inmate in the cell and told Plaintiff that "if you want to go back into your cell, you are going to have to fight your way back in." *Id.*

On June 2, 2017, Valdovinos told another inmate who regularly "pushed" Plaintiff around in his wheelchair that Plaintiff was the "biggest child molester on the yard." *Id.* at 10-11. This inmate "brushed off his remark" but Valdovinos instead "yelled to the over 100 inmates in the dining hall" that Plaintiff was the "biggest child molester on the yard." *Id.* at 11. Plaintiff also claims that Valdovinos had also been telling inmate that Plaintiff was given correctional officers "information about their illegal activities." *Id.*

Correctional Counselor Centeno came to Plaintiff's cell on June 23, 2017 and placed a tag on Plaintiff's cell indicating that he was going to get a cellmate. *See id.* at 12. Plaintiff claims he informed Centeno of the reasons that he could not have a cellmate but Centeno told him that she "already knew that" and it was "the very reason that she was going to have an inmate forced into" Plaintiff's cell. *Id.*

The following day, Valdovinos, Renteria, Duran, Casas, and Keyes" went to Plaintiff's cell and "forced an inmate" into the cell. *Id.* They then "closed the cell door and left the building." *Id.* Plaintiff claims that these Defendants knew this inmate was "suicidal and homicidal." *Id.* Plaintiff "began to scream, 'suicidal, cell 130!'" which he claims is "standard procedure to inform staff of a suicidal inmate." *Id.* After twenty minutes of Plaintiff yelling, the tower officer "used the intercom" and said to Plaintiff "go ahead and kill yourself." *Id.*

On October 28, 2016, Plaintiff claims that Espinoza "once again tried to put an inmate" into Plaintiff's cell. *Id.* at 16. Plaintiff alleges Espinoza told him that "Sgt. Chavez told him to force an inmate" into Plaintiff's cell despite Plaintiff's safety concerns. *Id.* Plaintiff was issued a Rules Violation Report ("RVR") and was found guilty resulting in "90 days loss of credit and a 30 days loss of privileges." *Id.*

On November 14, 2016, Captain Bracamonte and Sergeant Hampton directed Correctional Officer Melgoza to "attempt to force an inmate" into Plaintiff's cell "in spite of their knowing" that Plaintiff "would be in danger." *Id.* Again Plaintiff was issued an RVR which resulted in Plaintiff being found guilty and Lieutenant Frost "imposed a 90 days of credit." *Id.* at 16-17. On March 17, 2017, Espinoza again tried to place an inmate in Plaintiff's cell and again Plaintiff refused. *See id.* at 17. Another RVR was issued and following the disciplinary proceeding, Plaintiff was found guilty and "assessed a loss of 90 days of credit." *Id.*

On April 8, 2017, Correctional Officer Hannon came to Plaintiff's cell and told him to pack his property because he was "going to Ad-Seg." *Id.* Plaintiff claims Hannon told him that McGee told Hannon to put an inmate in Plaintiff's cell but McGee knew Plaintiff would refuse. *See id.* at 18. Instead of placing an inmate in Plaintiff's cell, McGee told Hannon to put Plaintiff in Ad-Seg. *See id.* Another RVR was issued and following another disciplinary hearing, Plaintiff was found guilty, "assessed a loss of 90 days credit, and the loss of 180 days of privileges." *Id.*

Plaintiff alleges that his wheelchair was "accidentally damaged by CDCR staff at the Substance Abuse Treatment Facility ("SATF")." *Id.* Before Plaintiff was transferred to RJD, he requested to repair the wheelchair but "in retaliation for maintaining a lawsuit against CDCR, they refused." *Id.* When Plaintiff was transferred to RJD he was informed that "wheelchairs are not transported as other property" but rather they are transported by a "contracted company." *Id.*

/ / /

/ / /

When Plaintiff inquired as to the location of his wheelchair, he claims Tucker told him that RJD staff was "not going to allow" Plaintiff to "recover [his] own wheelchair." *Id.* Plaintiff submitted an ADA claim which was denied. *See id.* at 22. Plaintiff alleges that the decision denying his request "falsely stated" that his wheelchair was "unrepairable." *Id.* However, Plaintiff was later permitted to meet with a "wheelchair vendor" who informed him that he could "easily fix" Plaintiff's wheelchair. *Id.* A new wheelchair was ultimately ordered for Plaintiff. *See id.* Plaintiff was later told that they would not repair his wheelchair and they would not order him a new one because he refused to withdraw his ADA complaint. *See id.* at 23. Plaintiff alleges that he is forced to use a wheelchair that causes him "multiple falls and pain throughout" his body. *Id.*

Plaintiff claims that he had a "court call hearing" scheduled on January 10, 2017 but Warden Paramo denied him the "ability to attend the court call hearing." *Id.* at 24. Plaintiff alleges Paramo, Hampton, and Renteria "confiscated" all of Plaintiff's "legal materials" on February 3, 2017. *Id.* In addition, he claims Deputy Attorney General Andrew Gibson was allowed to "search and confiscate all of [Plaintiff's] legal journals and all of the legal research that [Plaintiff] had collected over the years." *Id.* Plaintiff claims that because he was successful in pursing his legal matter against correctional officers in the "Yates" matter, prison officials failed to inform him of court orders issued in that matter. *See id.* at 25-26. When prison officials "became aware the lawsuit was not dismissed, they had [Plaintiff] placed in "Ad-Seg" as punishment. *Id.* at 26.

On September 20, 2016, Plaintiff "submitted a complaint to the USDC - Eastern District" to correctional officers for filing but claims Paramo instructed correctional officers to "not submit the complaint to the "U.S. Mail Post Office." *Id.* at 26-27. After filing a grievance, Paramo "allowed [Plaintiff's] legal mail to leave the institution." *Id.* at 27.

Plaintiff seeks injunctive relief, compensatory damages in the amount of $900,000 and $2,000,000 in punitive damages, along with the "restoration of the credits taken for the Rules Violation Reports and the removal of these reports from C-file." *Id.* at 30.

C. Eighth Amendment Failure to Protect Claims

Plaintiff claims throughout his Complaint that many Defendants failed to protect him from harm by other inmates when they attempted to force him to have a cellmate and refused to provide him with single cell status. It does not appear that Plaintiff ever had a cellmate while he was housed at RJD.

The Eighth Amendment requires that prison officials take reasonable measures to guarantee the safety and well-being of prisoners. *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994); *Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). To state an Eighth Amendment failure to protect claim, however, Plaintiff must allege facts sufficient to plausibly show that (1) he faced conditions posing a "substantial risk of serious harm" to his health or safety, and (2) the individual prison official he seeks to hold liable was "deliberately indifferent" to those risks. *Farmer*, 511 U.S. at 837; *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010). To demonstrate deliberate indifference, Plaintiff must allege facts sufficiently to plausibly show that the defendant both knew of and disregarded a substantial risk of serious harm to his health and safety. *Farmer*, 511 U.S. at 837. Thus, Plaintiff must allege "the official [was] both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and [that] he . . . also dr[e]w that inference." *Id.*

Plaintiff alleges insufficient factual allegations from which the Court might reasonably infer that Defendants were aware or became aware that Plaintiff faced any risk, let alone a substantial one from any other inmate. *Iqbal*, 556 U.S. at 678; *see also Gaut v. Sunn*, 810 F.2d 923. 925 (9th Cir. 1987) ("mere threat" of possible harm does not violate the Eighth Amendment); *Berg v. Kincheloe*, 749 F.2d 457, 459 (9th Cir. 1986) (deliberate indifference requires showing of "more than a mere suspicion that an attack will occur."); *Hernandez v. Schriro*, No. CV 05-2853-PHX-DGC, 2011 WL 2910710, at *6 (D. Ariz. July 20, 2011) ("While theoretical risk is always possible, *Farmer* requires more—'conditions posing a substantial risk of serious harm.'").

"Much like recklessness in criminal law, deliberate indifference . . . may be shown by circumstantial evidence when the facts are sufficient to demonstrate that a defendant actually knew of a risk of harm." *Lolli v. County of Orange*, 351 F.3d 410, 421 (9th Cir. 2003. Indeed, deliberate indifference may be established if Plaintiff had allege facts sufficient to "infer[] from circumstantial evidence" that "the risk was obvious," *Farmer*, 511 U.S. at 842; but he has alleged no such facts here. *See e.g., Cortez v. Skol*, 776 F.3d 1046, 1050 (9th Cir. 2015). Thus, even if Defendants "should have been aware of the risk, but [were] not," the standard of deliberate indifference is not satisfied "no matter how severe the risk." *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002); *Dixon v. Harrington*, No. 1:11-CV-01323-GBC PC, 2013 WL 28639, at *4 (E.D. Cal. Jan. 2, 2013) (finding claim that guard "fail[ed] to recognize" attacking inmate as plaintiff's  enemy amounted to "no more than negligence, which is an insufficient basis upon which to predicate a § 1983 claim.").

In addition, at the time Plaintiff filed this action he was housed at SVSP.  *See* Compl. at 1.  Plaintiff does not allege that he ever suffered any physical harm while housed at RJD arising from these Eighth Amendment claims.  Plaintiff cannot recover monetary damages for a "mental or emotional injury" without a "prior showing of physical injury or the commission of a sexual act."  42 U.S.C. § 1997e(e).

For all these reasons, the Court finds that Plaintiff has failed to state an Eighth Amendment Failure to Protect claim upon which relief may be granted.

D. Fourteenth Amendment Due Process claims

Plaintiff also alleges that he was denied due process when Defendants filed "false rules violation reports" and found him guilty following disciplinary proceedings.  *Compl.* at 14.  To the extent Plaintiff challenges the validity of the disciplinary proceedings which resulted from Defendants issuing RVRs on grounds that they violated his right to procedural due process, he also fails to state a claim upon which § 1983 relief can be granted. *See* 28 U.S.C. §§ 1915(e)(2), 1915A(b).

The Due Process Clause protects prisoners against deprivation or restraint of "a protected liberty interest" and "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)) (internal quotation marks omitted). Although the level of the hardship must be determined in a case-by-case determination, courts look to:

> 1) whether the challenged condition 'mirrored those conditions imposed upon inmates in administrative segregation and protective custody,' and thus comported with the prison's discretionary authority; 2) the duration of the condition, and the degree of restraint imposed; and 3) whether the state's action will invariably affect the duration of the prisoner's sentence.

*Ramirez*, 334 F.3d at 861 (quoting *Sandin*, 515 U.S. at 486-87). Only if an inmate has alleged facts sufficient to show a protected liberty interest does the court next consider "whether the procedures used to deprive that liberty satisfied Due Process." *Ramirez*, 334 F.3d at 860.

As currently pleaded, Plaintiff's Complaint fails to allege facts which show that the disciplinary punishment he faced as a result of the RVR subjected him to any "atypical and significant hardship in relation to the ordinary incidents of prison life." *Id.*; *Sandin*, 515 U.S. at 584. Plaintiff does not compare the conditions of his confinement before or after his disciplinary conviction. Nor does he allege the duration of his term of discipline, or the degree of restraint it imposed. *Ramirez*, 334 F.3d at 861 (quoting *Sandin*, 515 U.S. at 486-87).

Moreover, Plaintiff's pleading contains no "factual content that allows the court to draw the reasonable inference," *Iqbal*, 556 U.S. at 678, that Defendants' actions "presented a dramatic departure from the basic conditions of [Plaintiff's] indeterminate sentence," or caused him to suffer an "atypical" or "significant hardship." *Sandin*, 515 U.S. at 584-85; *see also Keenan v. Hall*, 83 F.3d 1083, 1088-89 (9th Cir. 1996), *amended by* 135 F.3d 1318 (9th Cir. 1998).

/ / /

Finally, to the extent Plaintiff requests damages based on allegedly invalid disciplinary conviction, and he seeks to remove these RVR reports from his central file," and "restore" the lost custody credits that were imposed as a result of his disciplinary conviction (*Compl.* at 30), he faces an additional hurdle. *See Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994).

State prisoners may not challenge the fact or duration of their confinement in a section 1983 action; their remedy lies in habeas corpus instead. *See Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005). Often referred to as the "favorable termination rule" or the "*Heck* bar," this limitation applies whenever state prisoners "seek to invalidate the duration of their confinement--either *directly* through an injunction compelling speedier release or *indirectly* through a judicial determination that necessarily implies the unlawfulness of the State's custody." *Id.* at 81 (emphasis in original). Accordingly, "a state prisoner's § 1983 action is barred (absent prior invalidation)--no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)--if success in that action would necessarily demonstrate the invalidity of confinement or its duration." *Id.* at 81-82. The favorable termination rule applies to prison disciplinary proceedings if those proceedings resulted in the loss of good-time or behavior credits. *Edwards v. Balisok*, 520 U.S. 641, 646-48 (1997).

Where "success in a ... [section] 1983 damages action would implicitly question the validity of conviction or duration of sentence, the litigant must first achieve favorable termination of his available state, or federal habeas, opportunities to challenge the underlying conviction or sentence." *Muhammad v. Close*, 540 U.S. 749, 751 (2004) (citing *Heck*, 512 U.S. 477; *Edwards*, 520 U.S. at 648). Because Plaintiff contends the punishment imposed as a result of his RVR affects the duration of his sentence, even a well-pleaded due process claim would be barred unless Plaintiff can also show his disciplinary convictions have been reversed, expunged, or otherwise invalidated. *Heck*, 512 U.S. at 486-87.

E. Access to Courts claim

Plaintiff also alleges that Defendants interfered with his ability to litigate a matter that he refers to as the "Yates" case by failing to notify him of Court proceedings and confiscating his legal materials. *See* Compl. at 24-27. Plaintiff also alleges that Defendants delayed his ability to file a complaint in the Eastern District of California by three weeks. *Id.* at 27.

Here, the Court finds that Plaintiff fails to allege facts sufficient to state a plausible access to courts claim under 28 U.S.C. § 1915(e)(2) and § 1915A(b)(1). Prisoners have a constitutional right of access to the courts. *Lewis v. Casey*, 518 U.S. 343, 346 (1996). In order to state a claim of a denial of the right to access the courts, a prisoner must establish that he has suffered "actual injury," a jurisdictional requirement derived from the standing doctrine. *Lewis*, 518 U.S. at 349. An "actual injury" is "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id.* at 348 (citation and internal quotations omitted).

The right of access does *not* require the State to "enable the prisoner to discover grievances," or even to "litigate effectively once in court." *Id.* at 354; *see also Jones v. Blanas*, 393 F.3d 918, 936 (9th Cir. 2004) (defining actual injury as the "inability to file a complaint or defend against a charge"). Instead, *Lewis* limits the right of access to the courts, as follows:

> the injury requirement is [limited to those tools] that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 346. Plaintiff's failure to set forth any allegations regarding an "actual injury" here is "fatal" to his claim. *Alvarez v. Hill*, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) ("Failure to show that a 'non-frivolous legal claim had been frustrated' is fatal."), quoting *Lewis*, 518 U.S. at 353 & n.4.

In addition to failing to allege an "actual injury," Plaintiff has also failed to allege facts sufficient to describe the "non-frivolous" or "arguable" nature of an underlying claim he contends was lost as result of Defendants' actions. *Christopher v. Harbury*, 536 U.S. 403, 413-14 (2002). The nature and description of the underlying claim must be set forth in the pleading "as if it were being independently pursued." *Id.* at 417. Plaintiff's Complaint contains no allegations whatsoever regarding his inability to access the courts, or any "actual injury" with respect to a "non-frivolous" criminal appeal, habeas action, or conditions of confinement claim. *Id.*

F. Remaining claims and Defendants

Based on the allegations set forth above , the Court finds Plaintiff's retaliations claims against Defendants Tucker, Caniman, McGee, Rink, Givens, Garcia, and Espinoza and Plaintiff's Eighth Amendment excessive force claims against Romero, Valdovinos, and Renteria are sufficient to survive the "low threshold" for proceeding past the sua sponte screening required by 28 U.S.C. §§ 1915(e)(2) and 1915A(b). *See Wilhelm v. Rotman*, 680 F.3d 1113, 1123 (9th Cir. 2012; *Iqbal*, 556 U.S. at 678; *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992) (When prison officials stand accused of using excessive force in violation of the Eighth Amendment, the core judicial inquiry is "... whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."); *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir.1995) (holding that "a prison official can violate a prisoner's Eighth Amendment rights by failing to intervene"); *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (First Amendment retaliation claim requires prisoner to allege: "(1) ... a state actor took some adverse action against [him] (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.").

/ / /

/ / /

/ / /

G. Leave to Amend

Because the Court has determined that some of Plaintiff's claims survive the sua sponte screening process, the Court will give Plaintiff the opportunity to either: (1) notify the Court of the intent to proceed with his claims against Defendants Tucker, Caniman, McGee, Rink, Givens, Garcia, Espinoza, Renteria, Romero and Valdovinos only; or (2) file an amended pleading correcting all the deficiencies of pleading identified by the Court in this Order. Plaintiff must choose one of these options within forty-five (45) days from the date this Order is filed. If Plaintiff chooses to proceed as to his claims against Tucker, Caniman, McGee, Rink, Givens, Garcia, Espinoza, Renteria, Romero and Valdovinos only, the Court will issue an Order directing the U.S. Marshal to effect service of his Complaint and dismiss the remaining claims and defendants.

**III. Conclusion and Order**

Good cause appearing, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Leave to File Excess Pages (ECF No. 3) is GRANTED.

2. Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. § 1915(a) (ECF No. 2) is **GRANTED**.

3. The Secretary of the CDCR, or his designee, shall collect from Plaintiff's prison trust account the $350 filing fee owed in this case by collecting monthly payments from the account in an amount equal to twenty percent (20%) of the preceding month's income and forward payments to the Clerk of the Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). ALL PAYMENTS SHALL BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

4. The Clerk of the Court is directed to serve a copy of this Order on Scott Kernan, Secretary, California Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, California, 94283-0001.

**IT IS FURTHER ORDERED** that:

5. The Court **DISMISSES** Plaintiff's claims all named Defendants with the exception of Tucker, Caniman, McGee, Rink, Givens, Garcia, Espinoza, Renteria, Romero and Valdovinos for failing to state a claim pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b).

6. The Court **GRANTS** Plaintiff forty-five (45) days leave from the date of this Order in which to either: (1) Notify the Court of the intention to proceed with the claims against Tucker, Caniman, McGee, Rink, Givens, Garcia, Espinoza, Renteria, Romero and Valdovinos only; or (2) File an Amended Complaint which cures all the deficiencies of pleading noted. Plaintiff's Amended Complaint must be complete in itself without reference to his original pleading. Defendants not named and any claims not re-alleged in the Amended Complaint will be considered waived. *See* S.D. CAL. CIVLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey*, 693 F.3d at 928 (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

7. The Court **DIRECTS** the Clerk of the Court to provide Plaintiff with a blank copy of its form Complaint under the Civil Rights Act, 42 U.S.C. § 1983 for Plaintiff's use and to assist him in complying with LR 8.2.a's requirements. *No further motions to exceed the page limits set by LR 8.2.a (which requires the use of the Court's form Complaint, and permits additional pages "not to exceed fifteen (15)") will be granted*.

**IT IS SO ORDERED**.

Dated: July 16, 2018

HON. LARRY ALAN BURNS
United States District Judge