UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESUS BARILLA CASTANEDA, CDCR #K-23993,<br><br>                                  Plaintiff,<br>      vs.<br><br>CDCR, et al.,<br>                                Defendants. | Case No.: 3:18-cv-1018-LAB-BGS<br><br>**ORDER:**<br><br>**(1) DISMISSING CLAIMS AND DEFENDANTS PURSUANT TO 28 U.S.C. § 1915(e)(2) AND § 1915A(b)(1); AND**<br><br>**(2) DIRECTING U.S. MARSHAL TO EFFECT SERVICE OF REMAINING DEFENDANTS IN SECOND AMENDED COMPLAINT PURSUANT TO 28 U.S.C. § 1915(d) AND Fed. R. Civ. P. 4(c)(3)** |

## I.  Procedural History

On May 21, 2018, Jesus Barilla Castaneda ("Plaintiff"), formerly incarcerated at Salinas Valley State Prison, ("SVSP") located in Soledad, California, filed a civil rights Complaint pursuant to 22 U.S.C. § 1983 (ECF No. 1). Plaintiff also filed a Motion to Proceed In Forma Pauperis ("IFP") pursuant to 28 U.S.C. § 1915(a) (ECF No. 2).

Plaintiff claimed almost 40 individual California Department of Corrections and Rehabilitation ("CDCR") correctional officials employed at the Richard J. Donovan Correctional Facility ("RJD") violated his constitutional rights when he was housed at RJD in 2016.

On July 17, 2018, the Court DISMISSED all of Plaintiff's claims against the named Defendants with the exception of Tucker, Caniman, McGee, Rink, Garcia, Espinoza, Renteria, Romero, and Valdovinos for failing to state a claim pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). (ECF No. 4 at 18.) Plaintiff was granted the option to either: "(1) Notify the Court of the intention to proceed with the claims against Tucker, Caniman, McGee, Rink, Garcia, Espinoza, Renteria, Romero, and Valdovinos only; or (2) File an Amended Complaint which cures all the deficiencies of pleading noted" in the Court's Order. (*Id.*)

Plaintiff chose to file a First Amended Complaint ("FAC") on September 14, 2018. (ECF No. 9.) In addition, Plaintiff had previously filed a "Request for an Extension of Time to Amend Complaint," ECF No. 7, which the Court DENIED as moot in light of the Court's acceptance of Plaintiff's FAC for filing.

Plaintiff was cautioned in the Court's July 17, 2018 order that "Defendants not named and any claims not re-alleged in the Amended Complaint will be considered waived." (ECF No. 4 at 18 citing S.D. CAL. CIVLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey*, 693 F.3d at 928 (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").) In Plaintiff's FAC, he no longer named as Defendants, Brocamonte, Stuart, Vogel, Anderson, Self, Mencias, Duran, Casas, Keyes, G. Lewis, or Ceriman. Accordingly, the Court found that the claims against these Defendants were waived and DISMISSED them from this action.

In addition, the Court conducted the required sua sponte screening and found that Plaintiff had failed to state a claim against all the named Defendants with the exception of

his retaliation claim against Valdovinos. (ECF No. 10 at 13-14.) Plaintiff was again given the option to either: "(1) Notify the Court of the intention to proceed with the claims against Valdovinos only; or (2) File an Amended Complaint which cures all the deficiencies of pleading noted" in the Court's Order. (*Id.* at 13.)

On December 11, 2018, Plaintiff chose the second option and filed his Second Amended Complaint ("SAC"). (ECF No. 14.)

## II. Sua Sponte Screening per 28 U.S.C. § 1915(e)(2) and § 1915A

### A. Standard of Review

As the Court previously informed Plaintiff, because he is a prisoner and is proceeding IFP, his SAC requires a pre-answer screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. § 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. § 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (citations omitted).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under § 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to § 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

///

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id*.

### B. Eighth Amendment allegations

On May 13, 2016, Plaintiff claims Defendant Valdovinos was verbally harassing both Plaintiff and other inmates. *See* SAC at 3. Plaintiff "filed an administrative appeal against Valdovinos" regarding this incident on May 25, 2016. *Id.* On June 20, 2016, when Plaintiff was "exiting [his] building" using a wheelchair, he claims Valdovinos told Defendant Romero to "get that [expletive]" while pointing to Plaintiff. *Id.* As Valdovinos watched, Plaintiff claims Romero "pushed" and "crashed" Plaintiff's wheelchair into a wall multiple times. *Id.* Plaintiff claims he sustained physical injuries as a result of this incident. *See id.* at 4-5.

The Court finds that Plaintiff has sufficiently alleged an Eighth Amendment against Defendants Valdovinos and Romero sufficient to survive the sua sponte screening process. *See Hudson v. McMillian*, 503 U.S. 1, 5, (1992) (unnecessary and wanton infliction of pain violates the Cruel and Unusual Punishments Clause of the Eighth Amendment); *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam) (for claims arising out of the use of excessive physical force, the issue is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.") (citing *Hudson*, 503 U.S. at 7) (internal quotation marks omitted).

However, to the extent that Plaintiff seeks to hold Defendants Kang and Duncan liable in their supervisory capacity, he has failed to allege facts sufficient to state an Eighth Amendment claim against them.

///

Nowhere in the body of his SAC does Plaintiff include "further factual enhancement" to describe when, how, or to what extent, Defendants Kang or Duncan personally caused him any injury. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557). Instead, Plaintiff simply claims that Kang and Duncan "were the supervisory officers who were in charge of Romero and Valdovinos." SAC at 5. However, there is no respondeat superior liability under 42 U.S.C. § 1983. *Palmer v. Sanderson*, 9 F.3d 1433, 1437-38 (9th Cir. 1993). "Because vicarious liability is inapplicable to . . . § 1983 suits, [Plaintiff] must plead that each government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 at 676; *see also Jones v. Community Redevelopment Agency of City of Los Angeles*, 733 F.2d 646, 649 (9th Cir. 1984) (even pro se plaintiff must "allege with at least me degree of particularity overt acts which defendants engaged in" in order to state a claim).

Therefore, the claims against Kang and Duncan are **DISMISSED** for failing to state a claim upon which relief may be granted.

### C. Retaliation claims

Throughout his SAC, Plaintiff alleges a number of Defendants retaliated against him for filing grievances. Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a 1983 claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995).

A retaliation claim has five elements. *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009). First, Plaintiff must allege that the retaliated-against conduct is protected. *Watison*, 668 F.3d at 1114.[1] Second, Plaintiff must allege Defendants took adverse action

---

[1] The filing of an inmate grievance is protected conduct. *Rhodes v. Robinson*, 408 F.3d 559, 568 (9th Cir. 2005).

against him.[2] *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005). Third, Plaintiff must allege a causal connection between the adverse action and the protected conduct.[3] *Watison*, 668 F.3d at 1114. Fourth, Plaintiff must allege the "official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." *Rhodes*, 408 F.3d at 568 (internal quotation marks and emphasis omitted).[4] Fifth, Plaintiff must allege "that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution...." *Rizzo*, 778 F.2d at 532; *Watison*, 668 F.3d at 1114-15.

Here, the Court finds that Plaintiff has sufficiently alleged a retaliation claim against Defendants Tucker, Tenoria, Glynn, and Ayran, based on the allegations set forth in Plaintiff's SAC. *See* SAC at 11-12. However, the Court finds that Plaintiff has not sufficiently alleged a retaliation claim against any other named Defendant.

### 1. Claims against Tucker, Cariman, McGee, and Givens

Plaintiff claims that he had previously possessed a wheelchair that was specific for his needs as a paraplegic when he was housed at the Substance Abuse Treatment Facility ("SATF"). *See* SAC at 7. However, Plaintiff claims that prison officials at CSATF removed his wheelchair for "refusing to plead guilty to criminal charges." *Id.* When Plaintiff arrived at RJD, he claims Tucker told him that the "retaliation that began at SATF would continue here at RJD." *Id.*

---

[2] The adverse action need not be an independent constitutional violation. *Pratt*, 65 F.3d at 806. "[T]he mere threat of harm can be an adverse action...." *Brodheim*, 584 F.3d at 1270.

[3] Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal. *Watison*, 668 F.3d at 1114 (citing *Pratt*, 65 F.3d at 808 ("[T]iming can properly be considered as circumstantial evidence of retaliatory intent.")).

[4] "[A] plaintiff who fails to allege a chilling effect may still state a claim if he alleges he suffered some other harm," *Brodheim*, 584 F.3d at 1269, that is "more than minimal," *Robinson*, 408 F.3d at 568 n.11. That the retaliatory conduct did not chill Plaintiff from suing the alleged retaliator does not defeat the retaliation claim at the motion to dismiss stage. *Id.* at 569.

Plaintiff wrote a letter to Tucker "threatening her (and others) with legal action" if they did not return his wheelchair. *Id.* Tucker allegedly "faxed a copy of the letter to Sgt. Caniman and McGee and asked that [Plaintiff] be punished." *Id.* Plaintiff claims Caniman, McGee and Givens "retaliated" against him twelve hours later by forcing him to accept another cellmate. *Id.* at 7-8. Plaintiff alleges that these Defendants knew he was "afraid of being hurt by another inmate." *Id.* at 8.

Plaintiff has failed to show that the action of requiring Plaintiff to be housed with another inmate is an "adverse action." *Rhodes*, 408 F.3d at 567. Plaintiff does not allege that he suffered any injury as a result of being housed with another inmate. Moreover, Plaintiff has alleged no facts to demonstrate that the actions of these Defendants caused him to be "chilled" from engaging in First Amendment activities. *Id.* at 568. In fact, Plaintiff alleges that in the months following these events he "filed multiple CDCR-602's against a dozen correctional staff." SAC at 8.

Therefore, the Court finds that Plaintiff has failed to state a retaliation claim against Defendants Tucker, Caniman, McGee, or Givens.

### 2. Claims against Espinoza and Archuletta

On October 20, 2016, Plaintiff alleges Espinoza and Archuletta retaliated against him for filing "CDCR-602's against multiple staff." SAC at 8-9. On this date, Plaintiff claims Espinoza "approached" him with another inmate. *Id.* at 9. This other inmate "repeatedly asked Espinoza for permission to begin assaulting" Plaintiff. *Id.* Espinoza "did not say 'yes' but he also didn't say 'no'." *Id.* Archuletta "entered the building" and purportedly overheard the inmate asking to assault Plaintiff. *Id.* Plaintiff alleges Archuletta told this inmate "yes, go ahead, this is your cell now." *Id.* Archuletta "grabbed [Plaintiff's] chair and pulled [Plaintiff] out of the doorway" of his cell. *Id.* Archuletta "told the inmate to enter [Plaintiff's] cell." *Id.*

However, Plaintiff offers no specific factual causal connection between his purported "protected conduct" and the alleged "adverse action." *See Watison*, 668 F.3d at 1114. Plaintiff claims, without any specific factual allegations, that Espinoza and

Archuletta were "aware" he had previously filed administrative grievances against "multiple staff." SAC at 8. However, he provides no causal link between this alleged awareness on the part of Espinoza and Archuletta and the events that purported took place on October 20, 2016. In addition, Plaintiff again fails to allege that the actions of Espinoza and Archuletta caused him to be "chilled" from seeking to engage in "First Amendment activities." *Rhodes*, 408 F.3d at 568.

Therefore, the Court finds that Plaintiff has failed to state a retaliation claim against Defendants Espinoza and Archuletta.

### 3. Claims against Garcia, Espinoza, Centeno, and Shepard

Plaintiff alleges that he successfully opposed a legal challenge "filed by the Attorney General" in an unrelated matter of May 10, 2017. SAC at 10. Plaintiff claims that Defendant Garcia made a comment to him regarding this legal matter and told Plaintiff that "he had something to fix my good mood." *Id.* Later that day, Plaintiff alleges Espinoza told him that Garcia "contacted Centeno and asked Centeno to instruct C.O. Shepard and Espinoza to confiscate all of [Plaintiff's] legal material and search them for specific items." *Id.* Ultimately, Plaintiff's legal materials were "inventoried and returned" but some of the legal documents were missing. *Id.*

First, there are no allegations that Centeno, Espinoza, or Shepard were aware of the previous litigation and thus, their actions cannot rise to the level of retaliation. Second, Plaintiff fails to allege that the actions of any of these Defendants caused him to be "chilled" from seeking to engage in "First Amendment activities." *Rhodes*, 408 F.3d at 568.

Therefore, the Court finds that Plaintiff has failed to state a retaliation claim against Defendants Garcia, Centeno, Espinoza, and Shepard.

### 4. Claims against Hampton, Miller, and Ortega

Plaintiff alleges Defendants Hampton, Miller, and Ortega "retaliated against [him] by conducting a cell search" on July 10, 2017. SAC at 11. Plaintiff claims that after the search, he discovered his "legal materials strewn about the floor" and "covered in

toothpaste, shampoo, and food." *Id.* Plaintiff claims Hampton told him that the CDCR and RJD were "spending thousands" because of his successful appeals requiring construction to provide accessibility to "programs, activities, and services for wheelchair bound inmates." *Id*. at 10-11.

Again, Plaintiff alleges no facts to show that Miller and Ortega had any knowledge of his previous grievances and therefore, there are no facts to suggest that the cell search was conducted in retaliation for the filing of these grievances. In addition, once again, Plaintiff has failed to allege that the actions of the Defendants "chilled" his participation in First Amendment activities. As stated above, detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Therefore, the Court finds that Plaintiff has failed to state a retaliation claim against Defendants Hampton, Miller, and Ortega.

### D. Claims against Defendant Gibson

Plaintiff claims that Defendant Gibson, a Deputy Attorney General, was the "lawyer representing the Defendants in a separate matter." SAC at 12. Plaintiff claims Gibson "had [Plaintiff] transferred to RJD" and "came to RJD and had Lt. Hernandez, B. Self, and Sgt. Hampton go to [his] cell, confiscate all of [his] legal material and take them to the Attorney visiting room." *Id.* at 12-13. Plaintiff also claims that Gibson "had Laura Marran approach [his] family as a lawyer." *Id.* at 13. Plaintiff claims Marran collected a retainer to represent Plaintiff but after "Mr. Gibson had Mrs. Marran acquire authorization from [Plaintiff's] to collect case file from [his] former defense counsel" and turn the file over to Gibson, "Mrs. Marran could no longer be contacted and did not respond to calls, letters, and emails." *Id.*

"Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned, the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*

1 Here, the Court finds that Plaintiff's claims against Gibson, including his unexplained purported authority to direct officials within the CDCR, a separate agency, as to how they should operate their prisons, and his alleged conspiracy with a privately retained attorney, are not plausible. Moreover, even if Gibson was responsible for Plaintiff's transfer to RJD, this is not a constitutional violation. Plaintiff does not have a constitutional right to be housed in the institution of his choice. *See Olim v. Wakinekona*, 461 U.S. 238, 249 (1983); *McKune v. Lile*, 536 U.S. 24, 39 (2002) ("It is well settled that the decision where to house inmates is at the core of prison administrators' expertise.").

To the extent that Plaintiff's claims that Gibson and Marran were engaged in a conspiracy to deprive him of his unconstitutional rights, it appears that Plaintiff claims these actions somehow relate to his criminal proceedings. If Plaintiff seeks to challenge to the validity of his conviction and sentence, a habeas corpus action is his sole federal remedy. A lawsuit under 42 U.S.C. § 1983 is inappropriate. *Preiser v. Rodriguez*, 411 U.S. 475, 479 (1973) ("Release from penal custody is not an available remedy under the Civil Rights Act"); *Nettles v. Grounds*, 830 F.3d 922, 933 (9th Cir. 2016) (en banc) ("[H]abeas corpus is the exclusive remedy to attack the legality of [a] conviction or sentence...."), *cert. denied*, 137 S. Ct. 645 (U.S. Jan. 9, 2017) (No. 16-6556); *cf. Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005) ("§ 1983 remains available for procedural challenges where success in the action would not necessarily spell immediate or speedier release for the prisoner ... habeas remedies do not displace § 1983 actions where success in the civil rights suit would not necessarily vitiate the legality of (not previously invalidated) state confinement.").

Therefore, the Court finds that Plaintiff has failed to state a claim against Defendant Gibson and all claims against him are dismissed without leave to amend.

///
///
///
///
///

## III. Conclusion and Order

For the reasons discussed, the Court:

1) **DISMISSES** Plaintiff's claims against all named Defendants with the exception of Valdovinos, Romero, Tenoria, Tucker, Glynn, and Ayran for failing to state a claim pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b).

2) **DIRECTS** the Clerk to issue a summons as to Defendants Valdovinos, Romero, Tenoria, Tucker, Glynn, and Ayran found in Plaintiff's SAC (ECF No. 14) and forward it to Plaintiff along with a blank U.S. Marshal Form 285 for each Defendant. In addition, the Clerk will provide Plaintiff with a certified copy of the July 17, 2018 Order granting Plaintiff IFP status, a certified copy of his SAC, and the summons so that he may serve Defendants Valdovinos, Romero, Tenoria, Tucker, Glynn, and Ayran. Upon receipt of this "IFP Package," Plaintiff must complete the Form 285s as completely and accurately as possible, *include an address where each named Defendant may be served*, *see* S.D. CAL. CIVLR 4.1.c, and return them to the United States Marshal according to the instructions the Clerk provides in the letter accompanying his IFP package;

3) **ORDERS** the U.S. Marshal to serve a copy of the SAC and summons upon Defendants Valdovinos, Romero, Tenoria, Tucker, Glynn, and Ayran as directed by Plaintiff on the USM Form 285 provided to him. All costs of that service will be advanced by the United States. *See* 28 U.S.C. § 1915(d); FED. R. CIV. P. 4(c)(3);

4) **ORDERS** Defendants Valdovinos, Romero, Tenoria, Tucker, Glynn, and Ayran, once served, to reply to Plaintiff's FAC within the time provided by the applicable provisions of Federal Rule of Civil Procedure 12(a). *See* 42 U.S.C. § 1997e(g)(2) (while a defendant may occasionally be permitted to "waive the right to reply to any action brought by a prisoner confined in any jail, prison, or other correctional facility under section 1983," once the Court has conducted its sua sponte screening pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A(b), and thus, has made a preliminary determination based on the face on the pleading alone that Plaintiff has a "reasonable opportunity to prevail on the merits," defendant is required to respond); and

5) **ORDERS** Plaintiff, after service has been effected by the U.S. Marshal, to serve upon Defendants or, if appearance has been entered by counsel, upon Defendants' counsel, a copy of every further pleading, motion, or other document submitted for the Court's consideration pursuant to FED. R. CIV. P. 5(b). Plaintiff must include with every original document he seeks to file with the Clerk of the Court, a certificate stating the manner in which a true and correct copy of that document has been was served on Defendants or Defendants' counsel, and the date of that service. *See* S.D. CAL. CIVLR 5.2. Any document received by the Court which has not been properly filed with the Clerk, or which fails to include a Certificate of Service upon the Defendants, may be disregarded.

**IT IS SO ORDERED**.

Dated: January 2, 2019

*[signature]*

HON. LARRY ALAN BURNS
United States District Judge